James D. Boyle, Esq.
Nevada Bar No. 08384
E-mail: jboyle@nevadafirm.com
Sean E. Story, Esq.
Nevada Bar No. 13968
E-mail: sstory@nevadafirm.com
HOLLEY DRIGGS, WALCH
FINE WRAY PUZEY & THOMPSON
800 South Meadows Parkway, Suite 800
Reno, Nevada 89521
Telephone:    775/851-7700
Facsimile:     775/851-7681

Dawn Newton
California Bar No. 209002 (PHV App. Forthcoming)
dnewton@donahue.com
Eric A. Handler
California Bar No. 224637 (PHV App. Forthcoming)
ehandler@donahue.com
Padmini Cheruvu
California Bar No. 301292 (PVH App. Forthcoming)
pcheruvu@donahue.com
DONAHUE FITZGERALD LLP
1999 Harrison Street, 25th Floor
Oakland, California 94612-3520
Telephone: (510) 451-3300
Facsimile: (510) 451-1527

*Attorneys for Plaintiff Torn Ranch, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| TORN RANCH, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>INK DROPS GROUP OF NEVADA, INC., a Nevada corporation; EMIL MILLER, an individual; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>1. Trade Dress Infringement<br>2. Deceptive Trade Practices<br>3. Interference with Prospective Economic Advantage<br><br>(JURY DEMAND) |

Plaintiff Torn Ranch, Inc. ("**Torn Ranch**"), for its complaint against defendants Ink Drops Group of Nevada, Inc. ("**Ink Drops**"), Emil Miller ("**Miller**"), and Does 1 through 10, inclusive, (together, the "**Does**," and together with Ink Drops and Miller, "**Defendants**") states and alleges as follows.

## JURISDICTION, PARTIES, AND VENUE

### Federal Subject Matter Jurisdiction

1. The Court has subject matter jurisdiction over this action under 15 U.S.C. §§ 1121 (trademark claims), 28 U.S.C. § 1331 (federal subject matter jurisdiction), 28 U.S.C. § 1338(a) (trademark actions), and 28 U.S.C. § 1367(a) (supplemental jurisdiction over state law claims). This action includes a claim for infringement of trade dress under section 43(a) of the Lanham Act (as authorized by 15 U.S.C. § 1125(a)).

### Parties

2. Torn Ranch is a California corporation with its principal place of business in Petaluma, California.

3. Torn Ranch is informed and believes, and based thereon alleges, that at all times relevant hereto Ink Drops: (a) has been a Nevada corporation with its principal place of business in Las Vegas, Nevada within this District; and (b) has been doing business under the fictitious names "Another Basket Case" and "Harvest Meadow."

4. Torn Ranch is informed and believes, and based thereon alleges, that all times relevant hereto Miller has conducted business in this District related to the allegations herein and resided within this District.

5. Torn Ranch is informed and believes, and based thereon alleges, that the Does are entities or individuals subject to the Court's jurisdiction. The true names and capacities, whether individual, corporate, associate, or otherwise, of the Does are unknown to Torn Ranch, which therefore sues the Does, and each of them, by such fictitious names, and Torn Ranch will seek leave of the Court to amend this Complaint to allege such true names and capacities when the same are ascertained.

6. Torn Ranch is informed and believes, and based thereon alleges, that each of Defendants was the agent, employee, and/or alter-ego of each of the other remaining Defendants and, at all times relevant hereto, acted within the course and scope of such agency and/or employment.

### Venue

7. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c).

### GENERAL ALLEGATIONS

8. For over forty years, Torn Ranch has focused its business on using natural, sustainable, and organic ingredients, combining those with innovative packaging, and thereby selling a wide range of creatively-packaged, high-quality food products to its wholesale customers (each, a "**Torn Ranch Product**" and together, the "**Torn Ranch Products**").

9. As some of the Torn Ranch Products, Torn Ranch sells nuts, chocolates, and dried fruits (together, the "**Torn Ranch Foods**") in packaging that is inherently distinctive, or has acquired secondary meaning, as a symbol of origin pointing to Torn Ranch (together, the "**Torn Ranch Packaging**"). Through Torn Ranch's efforts, the Torn Ranch Packaging has become recognized trade dress to relevant consumers throughout the United States (e.g., wholesale purchasers of nuts, chocolates and dried fruits for use in connection with hotels and casinos) with tremendous goodwill, and the Torn Ranch Packaging is widely and favorably recognized and relied upon by the relevant consuming public as indicating high quality foods originating exclusively from Torn Ranch.

10. The Torn Ranch Products marketed and distributed with the Torn Ranch Packaging are not available for purchase by the public. Instead, Torn Ranch markets and sells those particular products only to Torn Ranch's wholesale customers, such as hotel and casino chains and companies marketing gift baskets, which establish accounts with Torn Ranch for the purpose of acquiring bulk lots of the Torn Ranch Products for resale thereof to the public. Torn Ranch does not allow its competitors to open any such

wholesale accounts with it, and Torn Ranch does not knowingly sell any of its products to its competitors on a wholesale basis.

11. Torn Ranch owns all the rights in and to the Torn Ranch Packaging. A picture depicting the Torn Ranch Packaging is set forth in "**EXHIBIT 1**" hereto.

12. The Torn Ranch Packaging is nonfunctional insofar as: it provides a creative, non-utilitarian means to present and display the Torn Ranch Foods in an cascading, tiered-like fashion that is not essential to the use or purpose of the Torn Ranch Foods or to the ability of Torn Ranch to deliver the Torn Ranch Foods to its customers; its primary significance is to establish in the minds of the Torn Ranch's customers that Torn Ranch is the source of origin of the Torn Ranch Foods; it does not increase the utility or practicality of the Torn Ranch Foods; there are many readily available alternative designs that Torn Ranch could have used and can use for the packaging of the Torn Ranch Foods; and the Torn Ranch Packaging is custom manufactured for Torn Ranch at a cost that actually increases Torn Ranch's expenses to manufacture the Torn Ranch Products containing the Torn Ranch Foods and thus, the design of the Torn Ranch Packaging is not the result of an economical production method that itself confers a competitive advantage on Torn Ranch vis-à-vis its competitors.

13. In connection with its use of the Torn Ranch Packaging, Torn Ranch does a significant amount of business with wholesale customers in and around Las Vegas, Nevada, including without limitation with hotel chains and casinos.

14. Torn Ranch is informed and believes, and based thereon alleges, that all times relevant hereto an individual named James Hurtado ("**Hurtado**") has been Ink Drops' president and registered agent for service of process.

15. In 2016, Ink Drops, through its agents such as Miller and Hurtado, contacted Torn Ranch using Ink Drops' "Another Basket Case" fictitious name and asked Torn Ranch to supply Ink Drops with samples of Torn Ranch Products distributed in the Torn Ranch Packaging (together, the "**Samples Request**").

16. Torn Ranch is informed and believes, and based thereon alleges, that, in connection with its Samples Request, Ink Drops intended (the "**Ink Drops Intention**") to: (a) acquire samples of Torn Ranch Products that use the Torn Ranch Packaging so Ink Drops could copy the Torn Ranch Packaging for Ink Drops' use in selling and distributing various combinations of nuts, chocolates, and dried fruits (together, the "**Ink Drops Foods**"), i.e., the very same types of foods being sold and distributed by Torn Ranch in the Torn Ranch Packaging; and (b) jump start its sale and distribution of the Ink Drops Foods by misleading the relevant consuming public into believing either that the Ink Drops Foods originate from Torn Ranch or that Torn Ranch has endorsed, sponsored, or otherwise authorized Ink Drops' efforts to sell and distribute the Ink Drops Foods using the copied Torn Ranch Packaging.

17. When Ink Drops made the Samples Request to Torn Ranch, Ink Drops did not disclose to Torn Ranch either the Ink Drops Intention or the fact that Ink drops was taking active steps to become a direct competitor of Torn Ranch. Instead, it was Torn Ranch's understanding that, with the Samples Request, Ink Drops was seeking to acquire units of Torn Ranch Products that use the Torn Ranch Packaging simply to evaluate whether to purchase larger quantities of those for Ink Drops' distribution of the same to the public in products such as gift baskets.

18. Acting on the Sample Request, Torn Ranch fulfilled an order by Ink Drops for samples of Torn Ranch Products that used the Torn Ranch Packaging.

19. Very recently a representative of one of Torn Ranch's customers in Las Vegas, Nevada (the "**Customer**"), while meeting with a Torn Ranch representative, showed Torn Ranch's representative various combinations of Ink Drops Foods that the Customer had obtained purportedly from Ink Drops (together, the "**Ink Drops Products**") and which were packaged in packaging that was nearly identical to the Torn Ranch Packaging and to which was affixed a "Harvest Meadow" logo in lieu of Torn Ranch's logo (together, the "**Ink Drops Packaging**").

20. At their meeting described above, the Customer's agent told Torn Ranch's representative that, because of the very significant similarities between the Torn Ranch Packaging and the Ink Drops Packaging and the fact that the Ink Drops Foods being distributed in the Ink Drops Packaging were largely the same in presentation and type as the Torn Ranch Foods being distributed in the Torn Ranch Packaging, the Customer's agent and the Customer were confused as to whether: (a) the Ink Drops Products using the Ink Drops Packaging had originated from Torn Ranch; and/or (b) Torn Ranch had endorsed or approved of, or otherwise had given its permission allowing, the distribution of the Ink Drops Foods in the Ink Drops Packaging. Since initially learning from the Customer about Ink Drops' commercial use of the Ink Drop' Packaging to market and distribute the Ink Drops Foods, other Torn Ranch customers, in addition to the Customer, have also communicated to Torn Ranch that they have been confused by the Ink Drops Packaging in the same ways as the Customer as described herein.

21. After Torn Ranch fulfilled Ink Drops' order of samples described above, Ink Drops did not place any additional order with, or otherwise contact, Torn Ranch until July 13, 2017, when Hurtado sent an email to Torn Ranch asking for a quote to purchase another of Torn Ranch's products presumably for the purpose of copying the packaging used therewith by Torn Ranch.

22. Torn Ranch is informed and believes, and based thereon alleges, that: (a) on or around September 9, 2016, Miller, using the email address emil@ink-drops.com, registered the harvestmeadow.com domain name; (b) Miller continues to own the harvestmeadow.com domain name; and (c) Miller and Ink Drops have been using the website to which the harvestmeadow.com domain name resolves ("**Defendants' Website**") to market the Ink Drops Foods in the Ink Drops Packaging and connect Ink Drops with new and existing customers for conducting business in connection with the Ink Drops Packaging. For instance, attached hereto as "**EXHIBIT 2**" is a screenshot of a page within Defendants' Website and located at https://www.harvestmeadow.com/tasty-

tower as of July 18, 2017 and which displays and advertises the Ink Drops Packaging that is nearly identical to the Torn Ranch Packaging.

23. Torn Ranch is informed and believes, and based thereon alleges, that Defendants are using the Inks Drops Packaging, which is nearly identical and/or confusingly similar to the Torn Ranch Packaging, for the purpose of promoting and selling the Ink Drops Foods – i.e., the exact same category and type of goods marketed and distributed by Torn Ranch in connection with the Torn Ranch Packaging.

## FIRST CLAIM FOR RELIEF

### Trade Dress Infringement Under The Lanham Act, 15 U.S.C. § 1125(a)

### (Against All Defendants)

24. Torn Ranch realleges and incorporates herein by this reference the allegations of paragraphs 1 through 23 above as though each is fully set forth below.

25. The Torn Ranch Packaging is distinctive;

26. Torn Ranch owns the Torn Ranch Packaging as trade dress;

27. The trade dress-related aspects of the Torn Ranch Packaging are non-functional;

28. Defendants commercially used, and are continuing to commercially use, the Ink Drops Packaging, without the consent of Torn Ranch, to market and distribute the Ink Drops Products in a manner that has caused, and/or is likely to continue to cause, confusion among ordinary consumers in the relevant consuming public as to the source, sponsorship, affiliation, or approval of the Ink Drops Products.

29. Because Torn Ranch has no control over the nature of Defendants' unlicensed and unauthorized use of the Torn Ranch Packaging and/or any product packaging that is confusingly similar thereto such as the Ink Drops Packaging, Torn Ranch has been and is continuing to be damaged by Defendants' unlicensed and unauthorized use of Torn Ranch Packaging and/or any product packaging that is confusingly similar thereto such as the Ink Drops Packaging.

30. Torn Ranch is informed and believes, and based thereon alleges, that Defendants knew, or should have known, of Torn Ranch's rights in and to the Torn Ranch Packaging, and that Defendants' adoption and continued use of the confusingly similar Ink Drops Packaging was and is knowing, willful, deliberate, and done with the intention of trading upon the goodwill built up by Torn Ranch in the Torn Ranch Packaging and Torn Ranch's business.

31. Defendants' use of the Ink Drops Packaging has caused, and unless restrained and enjoined by this Court will continue to cause, substantial, immediate, and irreparable injury to Torn Ranch's business, reputation, and goodwill for which Torn Ranch is without an adequate remedy at law. Torn Ranch is therefore entitled to preliminary and permanent injunctive relief as against Defendants, and each of them, in connection with Defendants' unlicensed and unauthorized use of the Ink Drops Packaging.

32. As a direct and proximate result of Defendants' adoption and continued use of the Ink Drops Packaging, Torn Ranch has suffered and continues to suffer injury, loss, and damages in an amount to be proven at trial. Based on Defendants' actions and omissions alleged herein, Torn Ranch is entitled to injunctive relief, monetary damages, and other remedies provided by sections 1116, 1117, and 1118 of the Lanham Act, including without limitation Defendants' profits, treble damages, reasonable attorneys' fees, costs, prejudgment interest, and an order requiring all labels, signs, prints, packages, wrappers, receptacles, and advertisements in Defendants' possession that use, incorporate, or depict the Ink Drops Packaging, and all plates, molds, matrices, and other means of making the same, be delivered and destroyed.

WHEREFORE, Torn Ranch prays for judgment as set forth below.

///

///

///

- 7 -

## SECOND CLAIM FOR RELIEF

### Deceptive Trade Practices

### (Against All Defendants)

33. Torn Ranch realleges and incorporates herein by this reference the allegations of paragraphs 1 through 23 above as though each is fully set forth below.

34. Section 598.0915, subsection 3, of the Nevada Revised Statutes provides that one who, in the course of conducting business, "[k]nowingly makes a false representation as to affiliation, connection, association with or certification by another person" has engaged in a "deceptive trade practice."

35. In violation of Section 598.0915, subsection 3, of the Nevada Revised Statutes, Defendants have, with their copying of the Torn Ranch Packaging and their distribution of Ink Drops Products in the Ink Drops Packaging, engaged in a deceptive trade practice by representing falsely in the course of conducting business that Defendants are purportedly affiliated, connected, and/or associated with Torn Ranch or that Torn Ranch has supposedly endorsed or approved of, or otherwise has given its permission allowing, the distribution of Ink Drops Products in the Ink Drops Packaging.

36. Section 598.0915, subsection 4, of the Nevada Revised Statutes provides that one who, in the course of conducting business, "[u]ses deceptive representations or designations of geographic origin in connection with goods or services for sale or lease" has engaged in a "deceptive trade practice."

37. In violation of Section 598.0915, subsection 4, of the Nevada Revised Statutes, Defendants have, with their copying of the Torn Ranch Packaging and distribution of Ink Drops Products in the Ink Drops Packaging, engaged in a deceptive trade practice in the course of conducting business by using deceptive representations or designations or geographic origin in the form of the Ink Drops Packaging to deceive the relevant consuming public into believing falsely that those Ink Drops Products originated from Torn Ranch.

38.     Section 598.0923, subsection 2, of the Nevada Revised Statutes provides that one who, in the course of conducting business, "knowingly . . . [f]ails to disclose a material fact in connection with the sale or lease of goods or services" has engaged in a "deceptive trade practice."

39.     In violation of Section 589.0923, subsection 2, of the Nevada Revised Statutes, Defendants have, in connection with their copying of the Torn Ranch Packaging and distribution of Ink Drops Products in the Ink Drops Packaging, knowingly failed to disclose to Defendants' actual or prospective customers, many of which are also actual or prospective customers of Torn Ranch, that, notwithstanding the fact that the Ink Drops Packaging copies the Torn Ranch Packaging, the Ink Drops Products do not originate from Torn Ranch and Torn Ranch has neither endorsed nor approved of Ink Drops nor otherwise given its permission allowing Ink Drops to commercially use the Ink Drops Packaging.

40.     Section 598.0923, subsection 3, of the Nevada Revised States provides that one who, in course of conducting business, "knowingly . . . [v]iolates a state or federal statute or regulation relating to the sale or lease of goods or services" has engaged in a "deceptive trade practice."

41.     In violation of Section 589.0923, subsection 3, of the Nevada Revised Statutes, Defendants have, in connection with their copying of the Torn Ranch Products and distribution of the Ink Drops Products in the Ink Drops Packaging, knowingly violated the federal Lanham Act, 15 U.S.C. § 1125(a), in the manner alleged herein.

42.     Defendants' use of the Ink Drops Packaging has caused, and unless restrained and enjoined by this Court will continue to cause, substantial, immediate, and irreparable injury to Torn Ranch's business, reputation, and goodwill for which Torn Ranch is without an adequate remedy at law. Torn Ranch is therefore entitled to preliminary and permanent injunctive relief as against Defendants, and each of them, in connection with Defendants' deceptive trade practices.

43. As a direct and proximate result of Defendants' deceptive trade practices, Torn Ranch has suffered and continues to suffer injury, loss, and damages in an amount to be proven at trial. Based on Defendants' actions and omissions alleged herein, Torn Ranch is entitled to equitable relief, monetary damages, and other remedies provided by Section 41.600, subsection 3, of the Nevada Revised Statutes, including without limitation an award of Torn Ranch's reasonable attorneys' fees, costs, prejudgment interest, and an order requiring all labels, signs, prints, packages, wrappers, receptacles, and advertisements in Defendants' possession that use, incorporate, or depict the Ink Drops Packaging, and all plates, molds, matrices, and other means of making the same, be delivered and destroyed.

### THIRD CLAIM FOR RELIEF

### Interference With Prospective Economic Advantage

### (Against All Defendants)

44. Torn Ranch realleges and incorporates herein by this reference the allegations of paragraphs 1 through 43 above as though each is fully set forth below.

45. There exists a prospective contractual relationship between Torn Ranch and each of its existing customers that has purchased Torn Ranch Products distributed with the Torn Ranch Packaging insofar as an existing customer of Torn Ranch is usually, unless the relationship is improperly interfered with, a repeat customer of Torn Ranch on future orders.

46. Torn Ranch is informed and believes, and based thereon alleges, that some of Ink Drops' actual or prospective customers for Ink Drops Products distributed in the Ink Drops Packaging are also prospective customers of Torn Ranch for Torn Ranch Products distributed in the Torn Ranch Packaging.

47. At all relevant times, Defendants were and have been aware of the prospective relationships that Torn Ranch has with its existing and potential customers as concerns orders those customers may place with Torn Ranch for Torn Rach Products

distributed with the Torn Ranch Packaging.

48. In copying the Torn Ranch Packaging and distributing the Ink Drops Products in the Ink Drops Packaging to existing and prospective customers of Torn Ranch, Defendants intended, and continue to intend, to harm Torn Ranch by preventing Torn Ranch from doing business that Torn Ranch would otherwise do with its existing and prospective customers for orders of Torn Ranch Products distributed with the Torn Ranch Packaging.

49. Defendants' copying of the Torn Ranch Packaging use and distribution of the Ink Drops Packaging was and continues to be improper and/or illegal under both federal law (e.g., Defendants' infringement of Torn Ranch's trade dress rights under the Lanham Act per the first claim for relief alleged herein) and Nevada state law (e.g., Defendants' commission of deceptive trade practices per the second claim for relief alleged herein). Accordingly, Defendants do not have any privilege or justification for their actions and omissions in connection with their copying of the Torn Ranch Packaging and their unlicensed and unauthorized use of the Ink Drops Packaging to confuse the relevant consuming public as described herein and thereby prevent Torn Ranch from doing further business with actual or prospective customers for Torn Ranch Products distributed with the Torn Ranch Packaging.

50. Torn Ranch is informed and believes, and based thereon alleges, that Defendants' actions and omissions in connection with their copying of the Torn Ranch Packaging and their unlicensed and unauthorized use of the Ink Drops Packaging has resulted in lost sales of Torn Ranch Products that Torn Ranch would otherwise have consummated with its actual or prospective customers in connection with orders for Torn Ranch Products distributed with the Torn Ranch Packaging.

51. As a direct and proximate result of Defendants' actions and omissions alleged herein, Torn Ranch has suffered and continues to suffer injury, loss, and damages in an amount to be proven at trial.

52. The aforementioned actions and omissions of Defendants were willful, wanton, malicious, and oppressive, undertaken with the intent to prevent Torn Ranch from doing further business with its customers in connection with the Torn Ranch Packaging, and justify an award in Torn Ranch's favor and against Defendants, and each of them, of exemplary and/or punitive damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Torn Ranch seeks relief as follows:

1. That, upon motion, the Court issue a preliminary injunction enjoining and restraining Defendants, their officers, managers, agents, servants, employees, representatives, attorneys, successors, and assigns, and all other persons acting in concert or conspiracy with Defendants or affiliated with Defendants, from:

(a) Using the Torn Ranch Packaging, or any confusingly similar product packaging or colorable imitation thereof, which includes without limitation the Ink Drops Packaging, in connection with the promotion, advertisement, display, sale, or distribution of any goods or services offered by Defendants, or any of them;

(b) Making any statements, or distributing any materials or packaging such as the Ink Drops Packaging, that are likely to lead members of the public to believe that any goods or services offered for sale or sold by Defendants, or any of them, are associated or connected with Torn Ranch, or are sold, licensed, sponsored, approved, or authorized by Torn Ranch;

(c) Otherwise taking any action likely to cause public confusion, mistake, or deception as to the connection, affiliation, sponsorship, approval, or other association of the goods or services of Defendants, or any of them, with Torn Ranch or its goods or services, whether in connection with the Ink Drops Packaging or otherwise; and

(d) Destroying, or otherwise disposing of or altering, any unit, copy, iteration, or sample of any Ink Drops Packaging or other products, materials, technologies, devices, components, documents, or electronically stored data or files that

relate or pertain in any way to the copying of the Torn Ranch Packaging, the creation of the Ink Drops Packaging, the use of the Ink Drops Packaging, the distribution of the Ink Drops Packaging, or the infringement or violation of any of Torn Ranch's rights;

2. That the Court issue a permanent injunction making permanent the orders requested in paragraphs 1(a), (b), and (c) of this Prayer For Relief;

3. That Defendants be required to make an accounting to Torn Ranch and be directed to pay over to Torn Ranch all gains, profits, and advantages realized by Defendants from Defendants' advertisement and/or distribution of goods and/or services in connection with the Ink Drops Packaging or any other product packaging that is confusingly similar to the Torn Ranch Packaging;

4. That Defendants be directed to pay to Torn Ranch three times the actual damages suffered by Torn Ranch in connection with its claim for relief herein for trade dress infringement, pursuant to 15 U.S.C. § 1117, in an amount to be proven at trial;

5. That Defendants be directed pay to Torn Ranch the actual damages suffered by Torn Ranch in connection with its second and third claims for relief herein for, respectively, deceptive trade practices and interference with prospective economic relations, in an amount to be proven at trial;

6. That, in connection with Torn Ranch's third claim for relief herein for interference with prospective economic advantage, Defendants be directed to pay to Torn Ranch punitive and exemplary damages, in an amount to be determined at trial;

7. That Defendants be directed to pay Torn Ranch's reasonable attorney's fees connected with this action, pursuant to 15 U.S.C. § 1117 and Section 41.600, subsection 3, of the Nevada Revised Statutes;

8. That Defendants be directed to pay to Torn Ranch prejudgment interest at the maximum rate permitted by law;

9. That the Court issue an order (the "**Destruction Order**") upon entry of judgment in this action requiring Defendants to destroy all units, copies, iterations, or

samples of any Ink Drops Packaging, any other packaging in the possession or control of Ink Drops that is confusingly similar to the Torn Ranch Packaging, and all advertisements for the same, pursuant to 15 U.S.C. § 1118 and Section 41.600, subsection 3, of the Nevada Revised Statutes;

10. That the Court issue an order requiring Defendants to serve on Torn Ranch, within thirty (30) days after the Court's issuance of the Destruction Order, a report, in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with Destruction Order; and

11. For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b) and LR 38-1, Torn Ranch demands a jury trial of all issues triable by a jury.

DATED this 19 day of July, 2017.

**HOLLEY DRIGGS WALCH
FINE WRAY PUZEY & THOMPSON**

*/s/ James D. Boyle*
JAMES D. BOYLE, ESQ.
Nevada Bar No. 08384
SEAN E. STORY, ESQ.
Nevada Bar No. 13968
800 South Meadows Parkway, Suite 800
Reno, Nevada 89521

DONAHUE FITZGERALD LLP

Dawn Newton (PHV Forthcoming)
Eric A. Handler (PHV Forthcoming)
Padmini Cheruvu (PHV Forthcoming)
1999 Harrison Street, 25th Floor
Oakland, California 94612-3520

*Attorneys for Plaintiff Torn Ranch, Inc.*